IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Civil No. 24-99 |
| | ) |
| STORM MABRY | ) |

**Opinion on Motion to Dismiss Count II and Count III**

Defendant Storm Mabry is charged in a three-count Indictment with Possession with Intent to Distribute a Quantity of Fentanyl and a Quantity of Cocaine Base, in violation of 21 U.S.C. §§ 824(a)(1) & 841(b)(1)(C) (Count I); Possession of a Firearm and Ammunition by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) (Count II); and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count III). Presently before the Court is Defendant Storm Mabry's Motion to Dismiss Count II and III of the Indictment. ECF No. 35. The government has filed a Response to the Motion. ECF No. 38. Oral argument on the Motion was held on January 15, 2025. ECF No. 40. In his Motion, Mr. Mabry argues that § 922(g)(1) is an unconstitutional regulation of the right to possess firearms in violation of the Second Amendment to the United States Constitution. Relying on said argument as it applies to the Felon in Possession Charge, Mr. Mabry further argues that the charge of carrying a firearm during the commission of a drug trafficking offense must also be dismissed as violative of his Second Amendment right to possess a firearm.

I.   **Background**

Mr. Mabry is charged with one count of possessing a firearm and ammunition, while knowing that he had previously been convicted of a crime punishable by imprisonment for a

term exceeding one year, in violation of 18 U.S.C. § 922(g)(1).[1] Section 922(g)(1) of Title 18 provides that "[i]t shall be unlawful for any person-(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition; . . . ." 18 U.S.C. § 922(g)(1). The Indictment alleges that Mr. Mabry has two prior qualifying state convictions. Mr. Mabry pleaded guilty to the prior convictions in or around March 15, 2022, in the Court of Common Pleas of Allegheny County. At criminal case number CP-02-CR-692-2021, Mr. Mabry was charged with Firearm Not to be Carried Without a License in violation 18 Pa. Cons. Stat. § 6106(a). At criminal case number CP-02-CR-3703-2021[2], Mr. Mabry was also charged with Firearm Not to be Carried Without a License in violation 18 Pa. Cons. Stat. § 6106(a). The government supplements Mr. Mabry's prior convictions in its Response by explaining that the March 15, 2022 plea involved four offenses occurring on four separate dates: On October 13, 2020, Mr. Mabry was arrested for Fleeing or Attempting to Elude an Officer, a misdemeanor offense; on October 14, 2020, he was again arrested for Fleeing or Attempting to Elude an Officer; on December 12, 2020, Mr. Mabry was arrested for Firearm Not to be Carried Without a License, Fleeing or Attempting to Elude an Officer, and DUI; and on April 28, 2021, he was arrested for Firearm Not to be Carried Without a License.

The facts supporting the present § 922(g)(1) and 924(c)(1)(A)(i) charges arose from a Pittsburgh Bureau of Police vehicle patrolling in the 2500 block of East Hills Drive in Pittsburgh, Pennsylvania on July 13, 2023. The patrol was initiated due to numerous calls of shots fired,

---

[1] For purposes of the Motion to Dismiss, the Court accepts as true the allegations of the Indictment. *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (abrogated on other grounds by *Rehaif v. United States*, 588 U.S. 225 (2019)).

[2] The Indictment identifies Mr. Mabry's second prior qualifying conviction as bearing case number CP-02-CR-**703**-2021, but in fact the correct case number is CP-02-CR-**3703**-2021.

ShotSpotter alerts, and drug trafficking occurring in the area. The patrol officers noticed Mr. Mabry in the area wearing pants and a zip jacket, which the officers believed to be uusual attire for 90-degree weather. Officers further observed Mr. Mabry pin his arm to his side, consistent with someone carrying a firearm. The officers recognized Mr. Mabry and called out to him by name. Mr. Mabry began to flee, and the officers followed. The officers saw Mr. Mabry discard his jacket, and later observed that he was no longer pinning his arm to his side. Eventually, Mr. Mabry was detained, and officers retraced the path he took, to find a loaded, stolen firearm and Mr. Mabry's jacket, which contained heroin and crack cocaine.

## II. Arguments

Mr. Mabry argues that § 922(g)(1) is unconstitutional as applied to him. He also argues that § 922(g)(1) is unconstitutional on its face. Next, he argues that 922(g)(1) is unconstitutionally vague. Finally, Mr. Mabry argues that § 922(g)(1) is an unconstitutional violation of the Constitution's Commerce Clause. Mr. Mabry acknowledges that his Commerce Clause argument is foreclosed by precedent, but he asserts it for preservation purposes.

Mr. Mabry supports his arguments by relying on the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) and the now-vacated Third Circuit's *en banc* decision in *Range v. Att'y Gen. United States of Am.,* 69 F.4th 96 (3d Cir. 2023), *cert. granted, judgment vacated sub nom. Garland v. Range*, No. 23-374, 2024 WL 3259661 (U.S. July 2, 2024) (*en banc*). While the government's petition for certiorari from the *Range* decision was pending, the Supreme Court decided *United States v. Rahimi*, 602 U.S. 680 (2024), after which the Supreme Court vacated the *en banc* decision in *Range* and remanded for further consideration. Since the filing of the present Motion, the Third Circuit issued a new *en*

*banc* decision in *Range*, reaching the same conclusions as it did in its prior *en banc* opinion. *Range v. Att'y Gen. United States*, 124 F.4th 218 (3d Cir. 2024).

In opposition to Mr. Mabry's "as applied" challenge, the government presents several independent arguments. First, the government argues that Mr. Mabry has failed to demonstrate that he possessed the firearm for self-defense, which is the only legitimate Second Amendment purpose recognized by the Supreme Court. Second, the government argues that Mr. Mabry's prior criminal history places him in a category where the Constitution permits barring him from possessing firearms and ammunition under § 922(g)(1). Finally, the government argues that its historical analysis of governmental restrictions on possessing firearms demonstrates that § 922(g)(1) is consistent with historical restrictions on possession of firearms and ammunition by people who have prior qualifying firearm convictions. Finally, as to Mr. Mabry's facial challenge, the government argues that the challenge fails because he cannot show that § 922(g)(1) is unconstitutional in all circumstances.

      **C.**     **Second Amendment Case Law**

The Second Amendment of the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of people to keep and bear Arms, shall not be infringed." The *Bruen* decision follows the Supreme Court's prior landmark Second Amendment decisions of *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago*, 561 U.S. 742 (2010). In *Heller* and *McDonald*, the Supreme Court "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Bruen*, 142 S. Ct. at 2122. In *Bruen*, the Supreme Court held, "consistent with *Heller* and *McDonald*, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside

the home." *Bruen*, 142 Sup. Ct. at 2122. The *Bruen* Court held that, New York City's requirement that a citizen show "proper cause" to carry a handgun in public, violates the Constitution, because it "prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id.* at 2156.

Relevant to the instant Motion to Dismiss, the *Bruen* Court held that the standard for a Second Amendment analysis is as follows: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects the conduct." *Id.* at 2129-30. If a Court determines that the conduct being regulated is presumptively protected by the Second Amendment, then to justify the regulation, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127. "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's protection." *Id.* at 2126.

In *Rahimi*, the Supreme Court clarified the methodology for resolving Second Amendment challenges under *Bruen*. Rahimi reaffirmed that the Second Amendment requires firearm regulations to be consistent with "historical tradition," 144 S. Ct. at 1897 (quoting *Bruen*, 597 U.S. at 24). With respect to the challenged statue at issue in *Rahimi*, 18 U.S.C. § 922(g)(8), which prohibits firearm possession by individuals subject to a domestic violence restraining order, the Court held that it does not violate the Second Amendment facially, or as applied. 144 S. Ct. at 1898. The Supreme Court explained that "our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." *Id.* at 1896. The Supreme Court held that § 922(g)(8) is constitutional, because it "is 'relevantly

similar' to those founding era regimes in both why and how it burdens the Second Amendment right." *Id.* at 1901 (quoting *Bruen*, 597 U.S. at 30).

In *Range II*, a declaratory judgment proceeding, the *en banc* Third Circuit Court addressed the constitutionality of 18 U.S.C. § 922(g)(1), as applied to the plaintiff, Bryan Range. Section 922(g)(1) barred Mr. Range from possessing firearms, because he had previously "pleaded guilty in the Court of Common Pleas of Lancaster County to one count of making a false statement to obtain food stamps in violation of Pennsylvania law." *Range*, 124 F.4th at 222-23 (*citing* 62 Pa. Stat. Ann. § 481(a)). Mr. Range sought "a declaration that § 922(g)(1) violates the Second Amendment as applied to him" and an "injunction prohibiting the law's enforcement against him." *Id.* at 223. "Range assert[ed] that but for § 922(g)(1), he would 'for sure' purchase another deer-hunting rifle and 'maybe a shotgun' for self-defense at home." *Id.*

The *Range* Court applied *Bruen* and *Rahimi* to determine whether § 922(g)(1) was constitutional as applied to Bryan Range. First, the Court concluded that "*Heller* and its progeny lead us to conclude that Bryan Range remains among 'the people'[protected by the Second Amendment] despite his 1995 false statement conviction." *Id.* at 228. Next, the *Range* Court found that "'the Constitution presumptively protects" Bryan Range's proposed conduct, "to possess a rifle to hunt and a shotgun to defend himself at home." *Id*. Therefore, the burden shifted to the government to show that "§ 922(g)(1), as applied to [Mr. Range], 'is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Id.* (quoting *Bruen*, 597 U.S. at 19). After reviewing the government's historical evidence and arguments, the *Range* Court concluded that "that the Government has not shown that the principles underlying the Nation's historical tradition of firearms regulation support depriving Range of his Second Amendment right to possess a firearm." *Id.* at 232 (citing *Rahimi*, 144 S.Ct.

at 1898 and *Bruen*, 597 U.S. at 17).  The *Range* Court succinctly summarized its holding, stating that, "[b]ecause the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights."  *Id.*  The Court described its decision as "narrow," addressing the constitutionality of § 922(g)(1) only as applied to Bryan Range.[3]  *Id.*

### III. Discussion

#### A. As Applied Challenge

An as applied challenge contends that a law's "application to a particular person under particular circumstances deprived that person of a constitutional right."  *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010) (citation omitted).  In light of the *Range* decision, it is clear that Mr. Mabry is one of the "people" protected by the Second Amendment, despite having a prior qualifying conviction.  Next, the Court determines whether "the Second Amendment's plain text covers an individual's conduct."  *Bruen*, 597 U.S. at 24.  If the plain text does not cover the person's conduct, then the regulation at issue does not violate the Second Amendment.  However, if the plain text does cover such conduct, then "the Constitution presumptively protects the conduct," and the burden shifts to the government to justify the constitutionality of the firearm regulation.  *Id.*

##### 1. Defendant's Conduct is Not Protected

Mr. Mabry appears to contend that he desires to possess firearms and ammunition as protected by the Second Amendment's guarantee of the right of the people to keep and bear arms.  However, his actual conduct is the focus for analysis, and his conduct at issue is not

---

[3] Notably, the Third Circuit observed that the government had not tried to justify disarming Mr. Range on the ground that he was physically dangerous. *Range*, 124 F.4th at 230 (explaining that the Government had "no evidence that [Mr. Range] pose[d] a physical danger to others or that food-stamp fraud is closely associated with physical danger").

protected under the plain text of the Second Amendment. Here, Mr. Mabry was arrested for possessing a stolen firearm and ammunition, and also for possessing said firearm in furtherance of a drug trafficking crime. Mr. Mabry's possession of the stolen firearm was, of course, in connection with evidence of drug trafficking. Moreover, once it was apparent to Mr. Mabry that law enforcement had identified him and called out to him, he fled from the police while disposing of the firearm and drugs along the way. Such conduct is a blatant attempt to prevent law enforcement from performing its duties, specifically, officers had a safety interest in ensuring that firearms and drugs are not randomly tossed on the ground and that persons not permitted to possess firearms do not in fact have such firearms on their person. Mr. Mabry's conduct of unlawfully possessing a stolen firearm and ammunition, when he knew he was prohibited from possessing firearms and ammunition based on his prior offenses, and his conduct in fleeing from law enforcement, establishes Mr. Mabry as a person who is dangerous to the safety of the public and is disruptive to the orderly functioning of society. Under these circumstances, the Second Amendment's plain text does not protect the Mr. Mabry's conduct. *Rahimi*, 144 S. Ct. at 1897; *Bruen*, 597 U.S. at 24. Therefore, Mr. Mabry's conduct is not presumptively protected by the Constitution. No further analysis is necessary. The government has no further burden to justify the § 922(g)(1) firearm regulation as applied to Mr. Mabry. Accordingly, because Mr. Mabry's conduct was not protected by the plain text of the Second Amendment, his as applied challenge fails.

### 2. Even if Mr. Mabry's Conduct was Protected, the Government Demonstrates Sufficient Historical Analogues

Even if Mr. Mabry's conduct were protected by the Second Amendment, his as applied challenge still fails, because as applied to him, § 922(g)(1) corresponds with "part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen,* 597

U.S. at 19.  As explained in *Bruen*, and re-affirmed in *Rahimi*, the government need only "identify a well-established and representative historical *analogue*, not a historical *twin*." *Id.* at 30 (emphasis in original).  "'To be compatible with the Second Amendment, regulations targeting longstanding problems must be 'distinctly similar' to a historical analogue." *Range*, 124 F.4th at 228 (citing *Rahimi*, 144 S. Ct. at 1898 (quoting *Bruen*, 597 U.S. at 29)). "[E]ven if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Bruen,* 597 U.S. at 30.  In determining whether historical and modern firearms regulations are similar enough, the Court inquiries into "how and why the regulations burden a law-abiding citizen's right to armed self-defense.'" *Bruen*, 597 U.S. at 29.

With such guidelines in mind, the Court concludes that the government has presented sufficiently similar historical analogues to § 922(g)(1).  The relevant historical analogous firearm regulations, cited by the government, disarmed persons deemed to be dangerous, not trusted to obey the law, or who were disruptive, or a threat, to society.  The purpose of such historical firearm regulations was to ensure the orderly functioning of society and to protect the public.  In addition, Mr. Mabry's prior convictions for Firearm Not to be Carried Without a License are "meaningfully different from" Bryan Range's crime of dishonesty, in that Mr. Mabry's conviction represents "a failure to comply with a state law regulating the possession and use of deadly weapons," which is "at least arguably dangerous." *United States v. Dorsey*, 105 F.4th 526, 532 (3d Cir, 2024).  Furthermore, Bryan Range's conviction was nearly thirty years old, whereas Mr. Mabry's convictions occurred approximately two years prior to his arrest in this case. *Id.*  Under similar circumstances, where the prior conviction occurred four years previous to an arrest, the Third Circuit concluded that "[i]t is not obvious, based on *Range*, that the

Second Amendment forbids a legislature from constitutionally disarming a felon only four years after the entry of his conviction." *Id.*

The regulated conduct, purposes, and objectives of the historical firearm analogues, when compared to the regulated conduct, purposes, and objectives of § 922(g)(1), as applied to Mr. Mabry, clearly reflect requisite similarity to establish § 922(g)(1)'s constitutional compliance with the Second Amendment. Mr. Mabry's relevant qualifying convictions – Firearms Not to be Carried without a License - also demonstrate that he is a threat to public safety and to the orderly functioning of society. While Mr. Mabry's prior convictions may not appear, at first blush, to be the type of conduct demonstrating dangerousness, the simple failure to obtain a license to carry his firearm *did* result in Mr. Mabry acquiring a qualifying conviction. Moreover, even considering his failure to obtain a license, his conduct of fleeing from law enforcement and throwing a stolen firearm and drugs, without regard to the consequence the abandoned firearm and drugs may have to others, is indicative of one who is a threat to public safety and to the orderly functioning of society. Further, Mr. Mabry's present offense conduct, of unlawfully possessing a stolen firearm and ammunition and using said firearm in furtherance of a drug trafficking crime, sufficiently places him in the category of persons who were historically properly disarmed to ensure the orderly functioning of society and to protect the public. Section 922(g)(1), as applied to Mr. Mabry, "is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. As such, § 922(g)(1) is constitutional as applied to Mr. Mabry. Mr. Mabry's "as applied" challenge to § 922(g)(1) fails.

### B. Facial Challenge

Mr. Mabry next argues that § 922(g)(1) is unconstitutional on its face. "A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case." *Marcavage*, 609 F.3d at 273 (citation omitted). "A party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.'" *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (*en banc*) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

The government argues that the facial challenge fails, because Mr. Mabry is unable to show that § 922(g)(1) is unconstitutional in *all* circumstances. The Court agrees. Initially, the above decision, finding that § 922(g)(1) is constitutional as applied to this Defendant, establishes that § 922(g)(1) is not unconstitutional in all cases. While Mr. Mabry relies upon the *Range* Court's finding, that § 922(g)(1) was unconstitutional as applied to Bryan Range, such holding was expressly narrow and limited to Bryan Range's prior fraud conviction and his proposed prospective protected firearm conduct. The *Range* Court did not find or even suggest that § 922(g)(1) is unconstitutional in all cases. Accordingly, Mr. Mabry's facial challenge to § 922(g)(1) fails.

### C. Vagueness

Mr. Mabry's vagueness challenge also fails. "A statute is void on vagueness grounds if it (1) 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits'; or (2) 'authorizes or even encourages arbitrary and discriminatory enforcement.'" *United States v. Fullmer*, 584 F.3d 132, 152 (3d Cir. 2009) (quoting *United States v. Stevens*, 533 F.3d 218, 249 (3d Cir.2008)). The statute is clear in delineating the conduct that bars a person from possessing a firearm or ammunition in violation of § 922(g)(1).

A person who has been convicted of a crime is able to understand whether the conviction for such crime is punishable by imprisonment for more than one year; and therefore, knows that such conviction makes it a crime for him to possess a firearm or ammunition in violation of § 922(g)(1). Criminal statutes clearly define crimes and prescribe corresponding penalties. Information that a prior conviction carries a potential punishment of imprisonment for more than one year, is readily available. Where the penalty for a crime of conviction includes punishment for a term of imprisonment of more than one year, then § 922(g)(1) bars that person from possession of a firearm or ammunition. Moreover, § 922(g)(1) requires the government to prove that the defendant actually *knew* that he had been convicted of a crime punishable by imprisonment for a term exceeding one year. Such a *mens rea* element, "makes it less likely that a defendant will be convicted for an action that he or she committed by mistake." *Fullmer*, 584 F.3d at 152 (citing *Gonzales v. Carhart*, 550 U.S. 124, 149, 127 Sects. 1610, 167 L.Ed.2d 480 (2007)). Thus, the Defendant's vagueness challenge to § 922(g)(1) fails.

### D. Commerce Clause

Finally, Mr. Mabry's argument that § 922(g)(1) is an unconstitutional violation of the Constitution's Commerce Clause is denied, as the argument is foreclosed by binding precedent. *See United States v. Singletary*, 268 F.3d 196, 204 (3d Cir. 2001).

### IV. Conclusion

For the reasons explained above, Mr. Mabry's argument, that 18 U.S.C. § 922(g)(1) is an unconstitutional regulation of the right to possess firearms in violation of the Second Amendment, fails. Accordingly, his Motion to Dismiss Count II, charging him with Possession of a Firearm and Ammunition by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1), will be denied. In addition, Mr. Mabry's Motion to Dismiss Count III, charging him with Possession

of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i), as violating his Second Amendment right to possess a firearm, will also be denied. Therefore, Mr. Mabry's Motion to Dismiss Count II and Count III of the Indictment (ECF No. 35) will be denied. An appropriate Order will be entered.

Dated: February 21, 2025

_____
Marilyn J. Horan
United States District Court Judge